Case No. 17-1002, Dave Bend Conservation Alliance Petitioner v. Federal Energy Regulatory Commission Mr. Brooks for the petitioner, Ms. Pexellas for the respondent, and Mr. Marwell for the intervener. Good morning, Your Honors. May it please the Court, my name is Jacob Brooks with the Bend One pipeline can be treated as two separate pipelines. Under the Federal Energy Regulatory Commission and the applicant, Trans-Pecos Pipelines view, there are two separate pipelines here. There's a 148-mile pipeline that is intrastate, not subject to the Commission's jurisdiction under the Natural Gas Act, and there's a separate pipeline, a 1,093-foot section of pipeline extending from the Rio Grande that falls under the Commission's Natural Gas Act Section 3 jurisdiction. But the reality is here that there's one functional pipeline. Neither segment can exist without the other. One applicant, one person, Trans-Pecos Pipeline is building both segments. Both segments of the pipeline are the same diameter, flow the same gas, and when you review the record, there can only be one logical conclusion that this pipeline is built to export gas from the Oaxaca to the Mexican border. This is your argument that the entire project is an export facility? Yes, Your Honor. And where did you raise that on rehearing before the Commission? Yes, the jurisdictional argument, and I understand that. The Natural Gas Act is clear that the argument has to be, or an objection has to be made in front of the Commission in a request for rehearing. And I would point the Court to Blue's Joint Appendix, page 474. That's the request for rehearing of the Conservation Alliance. 474? I have 491, I think. I believe it's 474, but I apologize if I'm incorrect about that. There is another one at 473, so I'll work off that one. I see, yes. So within the first heading of the request for rehearing by the Alliance, the Alliance states, the Commission erred in allowing the applicants requested classification of the system, incorrectly isolating the project into a single jurisdictional border crossing facility under Natural Gas Act Section 3 and a non-jurisdictional associated facility regulated as an intrastate pipeline. Which is your statement of the first of two questions that you're presenting for review. But then when you read the substance of the ensuing argument, and I'm sorry, I worked off a different one, but you go on for about four pages about how the upstream facility is an interstate one subject to Section 7, and that's the upshot of the argument. There's not a word about, and therefore is subject to Section 3. Right, and I understand that. And the reality is both Section 3 and Section 7 are of concern here. Yeah, but they're totally different arguments in terms of FERC's jurisdiction. Right. Yes, Your Honor. And just to follow up on Judge Kansas, don't you think it's significant that when FERC rejected your argument that you just quoted, it rejected it on the grounds that the pipeline, the upstream segment is carrying intrastate gas. In other words, it viewed your argument as a Section 7 argument. And so it said that won't fly because it's only carrying intrastate gas. That was their response to your argument. Right. And, again, the Section 7 argument is also relevant to here, but I would also— Yes, I agree. That's your other argument. I guess we're just pursuing Judge Kansas's question about whether your Section 3 argument is forfeited. Right, and I would refer back to the initial order issued by FERC, where in the initial order the agency says we only have jurisdiction over this 1,093-foot section of pipeline because we only regulate facilities at the border under Section 3. Right. I think they reached a Section 3 issue, but the law is clear. You have to re-raise that on rehearing. Right. Yes, and, you know, this Court has said before that raising an issue in one sentence can be sufficient. In the Louisiana Intrastate Gas Court v. FERC, I believe that's at 962 F. 2nd 37, this Court said, you know, the petitioner raised the issue in one sentence, and even though it was one sentence, that was enough. And I'm not aware of any case that's subsequently been decided. What I'm curious about, and maybe I just need to be educated on this, your core argument here, which I think implicates both Section 3 and Section 7, is they shouldn't have divided the pipeline into the 1,093 and the rest. Now, whether the rest is part of an export pipeline, it should have looked at it as a whole thing. You know, whether the gas that's going to Mexico is intrastate or interstate is your Section 7 argument. But as to this argument, I'm just wondering if they shouldn't have split it up for Section 7 purposes, wouldn't that also mean they shouldn't have split it up for Section 3? Does that argument? Yes, I would agree with that. The segmentation argument doesn't seem to me to be distinct from the source of the gas, which is the Section 7 argument, although, as Judge Katz has noted, every time you made this point about fragmentation or segmentation, it led into your Section 7 argument. But would the one necessarily implicate the other? I think you can view the Section 3 and Section 7 arguments as separate, but it does raise that same general issue of why is the pipeline drawn at 1,093 feet. Either way, we have to decide whether it was do we, this is what I'm trying to ask, to answer your Section 7 challenge, do we have to address whether they properly fragmented the, shall I call it the Mexico part of the pipeline versus what they call the Texas part of the pipeline, or is that segmentation that you kept arguing about in here? Right. Well, so I would say this. For the Section 7 argument, they are going to be flowing interstate gas through that section, and if the applicant had said from the very beginning we are going to flow interstate gas, then I don't think there would be any question that that entire stretch of pipeline from Oaxaca to Mexico would fall under the jurisdiction of Section 7. The issue is the applicant says we intend to flow interstate gas, and we know we're going to do so, and so they utilize that. But that is Section 7. I hear your point. I thought about this, too. What in Section 7 gives the commission authority to exercise its jurisdiction on the basis of an intent to flow interstate gas? It only has jurisdiction if it's actually flowing interstate gas. I guess I understand your point if there was evidence that this was all fraud to avoid NEPA. You might have a case. But what in the plain language of Section 7 would give the authority to regulate the upstream pipeline if it isn't at the moment flowing interstate gas? Right. I would point back to this exception that's being utilized, which is that Natural Gas Policy Act Section 311 exception, which is a very limited exception. The court has said, no, it's not intended to supplant the Section 7 authority that we have. Just to tie down the Section 3 forfeiture point before we get too deeply into the merits of your Section 7 argument, your Section 7 argument, as you say, turns on the subsequent statute, the Natural Gas Policy Act, the meaning of the words on behalf of how long the pipeline has to be intrastate before it can be used interstate. Those issues all seem to me very different from the artificial segmentation point that is the basis for your Section 3 argument. And this is not a case where your Section 7 argument is there's a pipeline that goes 100 feet to the border and then someone wants to say there's a separate project going just across the border. Right. So is the question, what makes this? The question is I don't see how you can use the merits in response to Judge Millett's question. I don't see how you can use the merits of your Section 7 arguments to sort of backdoor into Section 3 preservation. I see. Because the issues just seem to me very distinct. Right. And I would agree that they are distinct. The Section 7 and Section 3 arguments are distinct. I just think that the bar that's trying to be raised here for this request where we're hearing, you know, raising the objection is being raised well above what the courts have said and what the statute says. It says, you know, Because you think that one sentence is good enough? Yes, Your Honor. Okay. Yes. Why don't we just, unless my colleagues have any other questions about Section 3 or 4, why don't we just assume for the purpose of argument this morning that it's forfeited and go on to your Section 7 and 311 arguments? Yeah. Would that be okay? Yeah. Yes. Yes. So in reference back to your earlier question, Your Honor, you know, there's no doubt that when the pipeline flows interstate gas, it becomes subject to natural gas Section 7. So the issue becomes really this temporal aspect of do they get to utilize the Section 311 exception, you know, by just flowing it for a nominal period of time centrist state? And, you know, I would point back to the very beginning here, the application. The applicant says, after the commencement of intrastate service on Trans-Pecos Pipeline System, Trans-Pecos intends also to provide interstate transportation services under Section 311. The intent here was very clear that it's going to be flowing interstate gas. Okay. Let me just ask you a question as a fact question. I admit, but there's a hint in the intervener's brief about this. Subsequent to the opening of the line, did they begin to flow interstate gas? And was that approved under 311? I believe, yes, from my understanding. And did your client object to the use of 311 then? I'm not raising a waiver question. It's just a fact question. Right. No, I'm not aware that my client objected to the 311 issue because their concern was the NEPA analysis. So the EA was the concern. I see. Well, now go ahead then. All right. I'm sorry. Can I wrap up before you go on? And that is, I apologize. You got the question from Judge Tatel about intent to do interstate. But any time you're authorizing construction, you're talking about intent because it's not built yet. And what I'm trying to figure out is how in advance, at the time you're worried about NEPA, is FERC under your view supposed to figure out how much intra and how much interstate they intend to do? Or is this type of challenge really, I hate to say it, but is there almost like a rightness thing? We need to wait and see? Absent documentation as to here's the contracts we have for this gas, do we really know until they start running whether they are interstate with some 311 interstate or this was all a wink and a nod? We'll flow a little gas around for a couple months and then we're going to be chugging interstate for the rest of the time. And how's FERC supposed to deal with that way up front at the NEPA stage? Right. And FERC is in the business of reviewing intentions and plans. An applicant shows up, submits plans, and says this is what we intend to do. And I suppose FERC can only take the applicant at their word, but their word here was we intend to do this. Well, to be fair to them, they said we intend to do 311. Now, I don't have a sense of how much, maybe you do, how much interstate you can do and still call it 311. I assume if 100% of it ends up being interstate, they can no longer hide under 311 or maybe not. Maybe if you start interstate, you can sneak it in this way. I just don't know how this whole scheme works. Right. I don't know the exact level of interstate gas that an intrastate pipeline can carry. I just would refer back to this point that their intention was clear in what they were intending to do. And FERC can only take the applicant at their word because until that gas is flowing, you don't know exactly what's going to happen. Well, when you say their intention was clear, I mean the pipeline didn't come in and go, yeah, we're only going to do interstate, but we'll flush the system with some interstate gas first, so we can call it interstate. That might be clear. That's not what they did. They said it's interstate, run interstate, and we intend to add in interstate. And it's that very ambiguity that I'm asking you to help me understand what did FERC do wrong at this state when it had at least conflicting or dual statements from the pipeline? How was it supposed to know up front at this early stage? Right. And I think you would look at the purpose of Section 311, which is meant to be just a limited exception to avoid this wasteful sort of duplication where you have a wellhead that's served only by an intrastate pipeline, and an interstate pipeline says we want to buy from this. Rather than requiring the interstate facility to build an entirely new and sort of wasteful pipeline, they can just utilize that existing one. That's not what's happening here. It seems almost like what 311 was worried about was when you already had interstate systems up and going, and then someone wanted to use it to transport interstate gas. That was the waste, and vice versa. But we're at a construction stage because you have a NEPA claim, so I don't think we're going to do that. Right. Well, the NEPA analysis is supposed to consider the environmental impacts that are going to occur. And we know that the pipeline is going to flow interstate gas, and it is going to be built or be used as an interstate facility in the future. And this isn't a situation where there's already an existing pipeline and we're trying to flow interstate gas. The intention from the outset is clear. Sorry. We know, and the record is murky on this point, but we know a couple of things. One is we know FERC made a finding that there was a substantial intrastate gas flow. So this was probably not a case where this is like a complete sham. There's just no intrastate gas that could support the pipeline. Record seems to be unclear on whether there are delivery points within Texas. Record seems to be unclear about when the interstate connection will be made. Record seems unclear on how much intrastate versus interstate gas will flow. So I can easily imagine scenarios in which your 311 objection would be very powerful, and I can easily imagine circumstances where it would not be very powerful. And then I look at the FERC order, and all they say is that as of right now, there's only intrastate gas. That's non-jurisdictional. And then they say if the company subsequently provides qualifying service under 311, that won't trigger Section 7. That is a clearly correct statement of law that absolutely reserves the question of what might or might not qualify under Section 311. Right. I see I'm out of time, so I'll briefly answer. So first, I would say that FERC's characterization is different than the applicant's characterization, where they say we intend to do this. FERC might say, well, this might happen in the future, and we might have these scenarios happening, but the applicant's intent was clear. Why is it wrong for them to basically say, look, whatever hard question may arise under 311 when the interstate connection is made in the future, we won't deal with that. Right now, it's intrastate. That's all we know, and we can figure out later whether or not any subsequent interstate gas is qualifying or not. Right. Well, I would point to another area of the record where it's murky, as you said, where there's no reason really given, at least as far as I can tell, why the pipeline is flowing intrastate gas for this limited period of time and then switching to interstate gas. The Commission has findings that it is, in fact, flowing intrastate gas. Yes, I have. Do not challenge those findings. No, do not challenge those findings. So that's the problem. You've got a pipeline that says it's going to flow intrastate now. You've got FERC findings that that's what's happening. And it's hard to see how that becomes Section 7 now. It might later. Right. But that's not before us now. Well, but it won't become Section 7 later because the Section 311 exception is being used to swallow the section. That's why I asked you the earlier question about 311. It seems to me that whether 311 is properly used once this pipeline begins to flow interstate gas is a question not yet before us. That's a question you would have to raise. I mean, we're looking back in time here, right? It's all over. But assuming they hadn't already started it, the question would be you could have challenged the 311, the invocation of 311 when the interstate gas started to flow. And you could have said then, look, this is really a Section 7 function now because this is what they intended all along. Right. Which is not before us now. Well, I think the problem with that, though, is that since this is a NEPA challenge, you know, and Section 311 is exempt from NEPA requirements, at that point, you know, NEPA is not in play when Section 311 is invoked. If they were at that later stage to determine, if the pipeline comes up and says, okay, now we're ready to start doing some interstate stuff under 311, and FERC were to decide that, hang on, you've only been running for a couple months with interstate, and now you want to do 100% interstate or 90% or 80%, and you're going to be doing that going forward, you're really a Section 7 pipeline. Would NEPA kick in at that time? Would they have to do a NEPA review when they found it was subject to Section 7? Or is this your only shot for NEPA? I believe that this is the only shot for NEPA, from my understanding. And mainly I say that because FERC has already made that decision within their initial order that Section 311 would apply. Is there, if some other case, you know, would that, would you, and don't say what FERC says because you're not representing them. So would you, I just don't know, is a later determination that something has become or is about to become a Section 7 pipeline, a type of major federal action that's going to, or a type of federal action that triggers NEPA, and so you can do the NEPA you want then when the record, if it were ever to show, that this really is a Section 7 pipeline. I would say when that Section 7 authorization is issued, that's that action that the agency has taken. And so, yes, presumably that would trigger NEPA at that point. All right. Anything else? No. Okay.  Good morning, Your Honors. Beth Casella for the Commission. I would point, Your Honors, to the Egan Hub case, which is cited by the Commission, and also it's cited in FERC's brief. In that case, that was a show cause proceeding in which the applicant had asked for Section 311 authorization for an already constructed facility, and the Commission, that was, and that facility was going to flow 100 percent interstate gas. So Egan Hub was an inter. It was going to flow 100 percent. I know that. Sorry. It was going to flow. It was an intrastate pipeline that built a facility it hoped would be a 311 facility, but it explained to the Commission it would flow 100 percent gas, even though it had already been constructed at that point. The Commission ordered a show cause proceeding and determined that it was a Section 7 facility and that there did have to be a NEPA review at that time, even though it had already been constructed. Which case was that again? Egan Hub. It's cited at the end of the brief. When the company starts flowing interstate gas and contends that that is under Section 311 rather than Section 7, do they have to come to FERC to get an order to that effect, or can they just do it at their peril? They can do it, and within 30 days they have to notify the Commission that they're doing so, and they have to provide the Commission that notice, and it's public, and then people can complain about that. That's occurred in this case here. But if they can just do it absent any further agency action, what is the back-end point at which the NEPA claim could be re-raised as to Section 7? The parties can protest that filing. That's all in the Commission's regulations, which are included in our appendix. So an environmental group that had standing and was concerned about this could go in at that point, protest, FERC would be forced to render a decision one way or the other on 311 or 7, and then that action would trigger NEPA? There would have to be a NEPA. If the Commission found that it was a Section 7 facility, if it was a new facility that had never undergone NEPA analysis, then the Commission would, just as an EGAN hub said, we understand you're already built, but you still have to have your Section 7 proceeding, and you have to do a Section 7C certificate and everything that goes along with that. Now, that case you said involved 100 percent interstate gas. It did. How does FERC deal with it when you're at this upfront construction stage? And your NEPA consequences right now at the construction stage are different, depending on whether this is a Section 7 or not pipeline. And you have a business saying we're going to interstate, but we sure plan to add in interstate. I didn't see in FERC's decision any sort of rigor on what was demanded of the pipeline as to really when, how much, what defense in this decision or in something you can point me to do we have against circumventing NEPA and maybe even Section 7 at this upfront stage? What we have in the record here, Your Honor, is, and again, this really wasn't, the percentages weren't really raised to the Commission. They're going to do some interstate and keep doing some interstate. They argued they're going to do interstate for a minute, and then they're going to do all interstate. And so the Commission said, well, we're not going to look at that at this point, because what we have now is they're saying that they may do this, and they may do it, they may not do it. But what we have in the record, if you look at JA-9, which is the application transmittal letter, and JA-364, which is a data response, the Commission had asked specifically, what are you planning on flowing interstate on your system? And in both of those filings, the pipeline explained that they planned to predominantly flow Texas-sourced natural gas. Even if they flowed interstate gas, they still always intended to predominantly flow. So we didn't have a circumstance here where FERC was on any notice, based on this record, that there was a concern that there was subterfuge. And as Judge Katsas was pointing out, the Commission did explain, did find, that the filing here would not thwart or frustrate either Section 311 or Section 7, because the Commission explained that for three reasons. One is that, as Judge Katsas pointed out, the record showed there's abundant Texas-sourced natural gas to supply the pipeline without relying on any interstate volumes. And that's in the rehearing order, JA-558, paragraph 11. The Commission also said that Trans-Picos had shown that its pipeline would exclusively carry Texas-sourced gas when it initiated service. And finally, the Commission said this isn't a case where the only possible use of the facility is to provide interstate service. And I think what it's referring to there, even though it didn't cite to Eagan Hub there, is that was what happened at Eagan Hub. It could only be an interstate pipeline. Those words, initiate, and this isn't a case where it's only or even exclusively. Those are kind of weaselly words. What does it take to trigger FERC pushing back harder, going, really, what are your intentions here? That's, for what it's worth, my concern about how this happens is you have to make these upfront judgments. And when you're getting mixed signals from the pipeline. Does FERC have to wait until something's in its face, or does FERC have an upfront duty to pin them down? No, really, when you say initiate, how long is initiate? Is that a couple months? The Commission did ask them specifically about flows, what they intended to flow, and they explained that because they don't produce and they're only flowing for other entities, they can't be sure what their customers' percentages will be. Isn't that a problem then? No, it's not a problem, Your Honor, because, again, they're not doing any interstate service at the time that the Commission is approving this session. They're not doing anything because it's getting built. No, but they will, and no one's disputing the fact that they would only flow intrastate gas when it initiated service. What does that mean when they initiate service? When they start to flow gas on their system. When they start to flow, is that the first day, month? In this circumstance, it turned out to be the first. It went into service, the pipeline went into service on... I remember you said three months. Is that what initiate is? It was after two months of being built, the pipeline went into service and flowed only intrastate gas, and after five months, it started to flow intrastate gas. Well, I thought the pipelines brief said three months. Whatever, anyhow, three months, five months. Well, is that enough? Well, what the statute says is, all the statute says is that the Commission can allow any intrastate pipeline to deliver intrastate gas under 311 and... I know, but then we're getting to the wink, wink, intrastate. As Judge Katz was reading, you have a determination as to whether it's qualifying for this treatment. That's right, and that qualifying determination occurs when the filing is made within 30 days of 311 service starting, and people can file protests and complain about that. My question is, why isn't there an upfront duty? I get that you've got these later stage things, but what NEPA can do at that point? It's a different NEPA analysis. It's a different NEPA action. You're not addressing the construction problems and their impact on the environment, and so why aren't you required to have some more rigor up front when you've got mixed signals? If it's your position that all they have to do is three months, and then it's open season on interstate, and the best NEPA you're going to get is on that Section 7 decision later, that seems to me quite troubling. It's not that it's open. I think that that's how the statute is written, and I think that that's how the Commission's rule. It's not open season. It's that it's very open. The whole purpose of Section 311 was to allow existing, it doesn't say existing, but allow intrastate facilities, and again, the Commission found in its 1979 rulemaking regarding Section 311, it specifically said at 3536, if a new pipeline company is planned, it wouldn't fit within the definition of intrastate pipeline until it first engages in transportation. So even from the beginning, the Commission said you just have to be an intrastate pipeline. You're going to make a filing. Can you give me an example of a situation under which an applicant in this situation, where it says it's going to flow intrastate gas, later it will flow intrastate, can you give me an example of a situation where circumstances of that type of application might cause FERC to say, wait a minute, this looks to us to be like a Section 7 pipeline? Yeah, I think it would be where the pipeline would show that it wasn't planning on predominantly flowing intrastate flows, that it was really going to be an intrastate pipeline. Eagan Hub is an extreme example because it was 100%, but it wouldn't, I don't think it would. So if it said we're going to flow intrastate for a month and then do intrastate, that you would not, FERC would not approve that? If it was going to do 100% intrastate, Your Honor, after a month? No, 100% intrastate and then add intrastate to it in one month. Add predominant intrastate, I understand. Still keeping predominant intrastate? Predominantly intrastate. I don't believe that the Commission would approve that. Would approve that. No. I mean, we don't have that circumstance here, and I can't promise you that, and I don't have a case to cite you for that, but I can tell you that the – So suppose you have an applicant. Well, take this one. Did FERC ask the pipeline here, okay, you said you're going to do this in the future. When and how much? The Commission did ask specifically in one of its data requests, and it got an answer to that, which is what led to the predominant answer, and that's at – the data request is at JA-332, and the response is there as well, and on JA-333, they explain they can't estimate a precise percentage of gas, but that they will – they expect to – that they will predominantly remain an – they will predominantly flow intrastate gas. So on the record, the Commission did ask that. It didn't ask when, but it did ask how much. And on top of that, the Commission's regulations require the pipeline to provide quarterly reports. Every Section 311 service provider has to file a quarterly report, and the – it's at addendum of FERC's brief A-27. It's a 311 regulation. It's FERC form 549-D, and that requires quarterly reports regarding a number of things, including the total volumes transported for each transportation provided under Section 311. And that filing has to be made at FERC, and it has to be made at the state level as well. Okay, and then suppose you find out later, after, say, six or eight months of those reports, that they're now flowing predominantly intrastate gas. Then what? Then I think the Commission would do what it did in Eagan Hub, and it would issue a show cause order requiring them to show why they're an intrastate pipeline and not an intrastate pipeline. Okay, now suppose FERC's convinced they're now intrastate. Then that triggers NEPA? Yes, Your Honor. But the pipeline's already built. Right. And so what good is a NEPA analysis at that point? The Commission, at that point, could impose certain changes to how the pipeline is run. I understand there couldn't be routing changes, but there could be additional mitigation measures that the Commission could impose. Like what? Well, the fact is here, the Commission already looked at the environmental impact around the 1,000 feet. No, no, Your Honor. That's not correct. It looked at the cumulative impacts for the entire pipeline. Cumulative impact of the 1,000 feet on the entire pipeline, right? But it didn't look at the entire pipeline. It looked at the entire length of the pipeline. I'm not sure what it – I think that that means it looked at the entire length of the pipeline, the entire – But just as a cumulative effect on the – I think that's what it was saying, on the 1,000 feet. Right, but that's true. But it really did comprehensively look at it. If you look at the whole environmental assessment, it's about 61 pages. I know, but it wouldn't have been analyzing the environmental effects of building the pipeline other than that 1,000 feet. It was the cumulative effects for that 1,003 feet coming from the rest of the pipeline. No, Your Honor. I think if you look at the – And then how the cumulative effects works? If you look at the cumulative impact section starting at JA-417, it's the environmental impact outside of the one-mile area where the border crossing facilities are, the entire upstream facilities. And so the Commission goes through geology and soils, water resources, vegetation and wildlife. Did they make a finding of no significant impact as to the entire project? It made – I didn't see that. It didn't make – it didn't do full NEPA review regarding the upstream pipeline, but it did in extent – Well, but full – not in the sense of environmental impact statement, but they didn't make a FONSI finding to establish that the environmental assessment was sufficient. They did find that the cumulative impact, Your Honor, of the border crossing facilities on top of the effects that would occur from the upstream pipeline would not – they did make a FONSI finding regarding that, Your Honor. I'm sorry, they did? They did. Well, they made the finding as discussed. If you look at JA-419, for example – let's see if that's not it. If you look at the end of that section, the Commission has a cumulative impacts conclusion of 424, and this is considering the impacts that the Commission addressed in multiple pages on all of the different impact areas regarding the entire upstream pipeline. So the Commission's FONSI finding regarding the border crossing facilities here includes consideration of the cumulative impacts of the entire upstream facilities. But even FERC had this disclaimer in its analysis. It said something like, you know, the EA analysis extended only to areas affected by the PICO crossing and that the rest of the information was collected from the pipeline itself and submitted for background purposes. So that's included at – if you look at – it's actually pretty comprehensive. That's JA-364. In response to the Commission's data request, the pipeline provided this environmental report that starts at page 364, and it's quite comprehensive. And so, yes, they provided it, but it's provided based on extensive information. They didn't just say, hey, in our opinion that – So under your theory, we don't have to decide any of these complicated questions. Your theory is FERC already did a completely satisfactory NEPA analysis. Is that right? Of the whole pipeline. Of the whole pipeline. Is that your position? I would say that I certainly think that you don't have to do anything. So the first part of the answer is easy. We don't have to do what? I don't think you have to make any hard determinations here, and I think we should be affirmed. But I do think that if you're asking me would the environmental analysis be different or more extensive if it were Section 7? No, let me – no. My question was, from what you were saying, it sounded like you were telling us that FERC already did a fully satisfactory NEPA analysis. The Commission made that exact finding, Your Honor. It did make that finding in the orders. Okay, so then why do we have to decide any of these other questions? Why do we have to decide Section 3, Section 7? If FERC did everything it would have to have done if this was a Section 5 pipeline, then who cares? Why do we have to decide this? Well, then I guess you don't. But you're not serious about that. Well, I mean, I think that the environmental analysis would have been longer. It wouldn't have to necessarily be an environmental impact statement regarding the upstream pipeline because it doesn't seem like the way how it was built and with the mitigation measures. In your red brief, did you ask us to affirm on the ground that even if the entire project, under one theory or another, were federal, the environmental assessment was good enough? No. No, Your Honor, because the Commission didn't make that specific finding. All right, so let's go beyond that then. That doesn't help you. Go ahead. Yes, so we asked, doesn't FERC need to know at this early stage what they're going to be transporting for the pipeline and when? No, we can tell at this early stage whether this is a potential 311 or a Section 7. You said, well, they asked what, you know, what percentage is, what's going to be going through. But they didn't ask when. And given that 311, as you said, talks about what existing interstate pipelines can do to carry interstate, isn't the when question just as important? Well, the Commission had an answer to the when question for the purposes that its interpretation of Section 311 was satisfied that when it initiated service, it would provide 100% interstate service. What does it mean when it initiated service? When it starts flowing gas, Your Honor. When it starts, so that's one day. It theoretically could be one day. One hour. Is that FERC's view, really? One day? Just to be clear, one day? Suppose the application said. The Commission hasn't had, this issue hasn't, that issue hasn't been raised to the Commission that it could be one hour or one day. And what the Commission had here was some period of time that they even may. I mean, the Commission didn't even know for sure that they would. They said our intention is to do so. So it's more like this is kind of a declaratory finding of the Commission that you can be a 311. You would be an interstate pipeline. At that point, it could flow 311. Suppose the application said we apply for this pipeline. For the next first six months, it's going to be 100% interstate, 100%. Beyond that point, we will flow interstate gas, but we don't yet know when we'll start that or how much. What would FERC do with it? I think the Commission would find that just as it did here, that that would satisfy for purposes of this in advance finding, kind of like a declaratory, that that would be enough. So then under that circumstances, after six months, they could start flowing 100% interstate gas. Well, if they did so. Then what? Well, the Commission would know that right away, and the Commission would find that they were no longer. But then you would be on the point where there would be a meaningful NEPA analysis. If FERC said, well, we're not going to approve this under 311, we're going to do a NEPA analysis. But at that point, the pipeline's built and up and running. Well, I guess my answer to that, and I understand that that's a hypothetical. Of course it is, but you're asking us. We have to decide this case, and we have to interpret the statute. And we need to know what the consequences are of ruling in favor of FERC right now. And the answer you just gave, I was pretty comfortable with this until that answer you just gave me. Well, Your Honor, I think what it comes down to is no one's rights are gone. This order doesn't allow them. They didn't build this pipeline to do intrastate transportation. There's nothing in this record that shows this pipeline is being built. No, I think that's exactly the question we're asking. But there's nothing. They say this record shows that they're planning on always predominantly flowing intrastate gas. That's why I asked you my question. Suppose they say to you, we just don't, we guarantee it's six months intra. And after that, we guarantee we're going to do intrastate, but we don't know either when or how much. Okay, so I didn't see it as then indicating. To me, that wouldn't necessarily indicate. And I think the commission probably would ask that question just like it did here. What is your intention at that point? And suppose they say, look, we just don't know. We can't tell right now. It depends on circumstances. It depends on the economy. It depends on the productivity of gas fields. We just don't know. The FERC say, without that information, we're not going to do this under Section 3. If the commission didn't get the same kind of assurance Scott here, and I'm sorry I misunderstood your question, then the commission would likely say, we don't know what we will decide at the time that you file your Section 311. No, that's not my question. That's not my question. My question is that under the hypothetical I gave you, without the precise information that they said they can't give you, that is when and whether it will be predominant or not, whether FERC at that point would say, we're going to, without that assurance, we have to treat this as a Section 7 pipeline, and we're going to do a full NEPA analysis. I just, under the circumstance where they're not getting assurance that they intend to remain really an intrastate pipeline, you do have to be an intrastate pipeline in order to fit under Section 311 to flow intrastate gas, or you have to be an intrastate pipeline to flow intrastate gas under 311. So, yeah, I think that you're right, Your Honor, that the commission wouldn't be able to do the same thing in that circumstance where it didn't have an assurance of the intention to remain an intrastate pipeline. I guess this hypothetical sounded to me like this case, because I'm still not quite clear what the assurances are. The assurance you got on amount was a large percentage. Does that mean majority? On JA-9, it says predominantly Texas source gas. I'm reading from their answer on 332, a large percentage. Okay, so JA-9, they say Trans-Pecos Pipeline is expected to transport predominantly Texas source gas, but may also transport non-Texas source gas. And they say the same thing on JA-364, which is a data response. Okay. The pipeline explained that its principal business is expected to be transportation of predominantly Texas source natural gas. And then the initiate, was there any timeframe with that? So FERC found that that meant sort of just going forward. Yeah, this is what do you intend to flow. So, again, that question, the question to the pipeline. For how long? The pipeline was provide us a quantification of the percentage of natural gas that would originate in Texas and the quantity that would be transported under Section 311 authorization and the timing when such authorization would become necessary. The commission did ask those questions. And the answer they got was, again, explaining, given the proximity, given the location of where the pipeline is, that they expect it to always be able to flow predominantly, because there's so much Texas source gas there, they expect it to always be able to predominantly flow Texas source gas. When I asked you the question about what FERC would do if later it decided 311 was not appropriate, because it was flowing predominantly interstate gas, and you said that, well, FERC could attach environmental conditions of some kind, right? That's right. Wouldn't it make much more sense to say to the pipeline, hey, you said this is going to be predominantly intra, and you can't now make it predominantly inter because we haven't been able to do the NEPA review. Sure. Wouldn't that be a much better incentive to prevent a runaround? I think that the way it would work is it would become a Section 7 interstate pipeline at that point. That's my point. Why would you do that? Why wouldn't you just say to the pipeline, we certified this on the grounds that it would not be predominantly interstate, and you have to keep it that way? You know, I think the Commission would apply the Section 7 certificate consistent with the Certificate of Public Necessity. Thank you. Thank you. We'll hear from the intervener. Good morning, Your Honor. Jeremy Marwell for the intervener, Trans-Pecos Pipeline. If I could begin by answering Judge Tatel's question, I know it was outside the record. Completely outside the record. With your leave. Yes. The in-service date was March 31, 2017, the date of the first intra-state flow, so Texas gas, May 24, 2017, the date of the first flow of gas under Section 311, so interstate gas, was August 23, 2017, so five months after the facilities were placed in service, three months after the beginning of 100% interest rate flows. And since we're outside the record, do we have any idea at present how much gas is interstate and how much is intrastate? Again, with the acknowledgment that it's outside the record, for 2017, 81% intrastate flow. What did you say? 81%. 81% intrastate flow, 19% interstate flow. Those are for 2017 numbers. I should say, as the Commission explained, the pipeline reports quarterly to the Commission in public filings the Section 311 flow. It also reports to the Texas Railroad Commission the interstate and intrastate flows. And when the Commission reviews the Section 311 filings, it has in the past issued show-cause orders if a pipeline is not as it was presented at the time of the application. But if I could say – Well, just continuing our outside-the-record questions for a moment, what would happen, what would FERC do if, in one of these periodic reports, the interstate flow became predominant? Well, I think it would do what it has done in other cases where that is true. Yeah, what's that? There are cases cited in the Egan Hub decision, Three Rivers case and the Saltville case, where, in fact, the market has shifted and you could have a pipeline that was once intrastate is now flowing interstate. It tends to issue a show-cause order where the pipeline has to justify whether the pipeline should now be regulated under Section 7. And if the pipeline can't do that, then the FERC initiates a Section 7 proceeding over the pipeline. Do you have a sense of what pipelines – how they view this inquiry? For example, you've been proceeding just sort of on statistics you gave us, and then one month, for whatever technical reason or something, you were actually 98 percent interstate. Does that trigger this thing, or does it have to be – it's the timeframe here that seems to be missing. It would seem odd if just a week or a day or even maybe one month would be enough to send you in to go through all these Section 7 proceedings. But I have no sense of FERC's timeline on how long it takes to actually establish yourself as an intrastate one and how long you'd have to be doing that interstate to really trigger it, not just the volume but the lens. So the Commission's orders policing this boundary have tended to adopt a facts and circumstances inquiry that looks not just at the single percentage of flows but at the customers, at the market, to try to understand whether an intrastate pipeline is a bona fide intrastate pipeline. And I think that from the Commission's perspective, there may be a benefit to not having a specific bright line in the sand. They are trying to guard against evasion of the purposes of the Natural Gas Act and the Section 7 jurisdiction. And if I could focus on what was before the Commission, what it knew when it was making this decision on this record, at JA251, in addition to the points the Commission made, the pipeline informed FERC in response to one of the data requests that it didn't actually have any contracts yet for interstate interconnects. So this would be the thing that you need in order to get interstate gas into the system, which I think is relevant for looking at whether this is a bona fide intrastate pipeline. And as to evasion, this, in my respectful view, is the opposite of that. The pipeline from day one indicated that 311 service was a possibility in the future. I should say we view that that is exactly what 311 allows. So if there is some interstate flow on 311, that's what the plain text of the statute allows. The statute is not limited by its terms to existing pipelines. The Commission was able to make findings that there was abundant Texas-sourced gas. They asked the company, where are you going to get the gas? They asked for names and locations of receipt points, so the upstream Oaha header, and the company repeatedly indicated that it would predominantly flow intrastate gas, which is, in fact, what happened. As to NEPA, the one point would be NEPA follows from an agency's substantive jurisdiction. And so I think the first inquiry is, was there jurisdiction under Section 3 of Section 7? If so, then the scope of NEPA follows. NEPA is a procedural statute that doesn't enlarge or restrict the agency's substantive statute, if there are no further questions. Okay, thank you. Did Mr. Brooks have any time left? Okay, you can take two minutes. Thank you, Your Honors. I'll answer a question that I believe was brought up earlier about whether NEPA would apply when the Section 311 determination is made and maybe decide to go from Section 311 to Section 7. And upon further reflection, I'm not sure that it necessarily would apply because the triggering language of NEPA is a major federal action significantly affecting the environment. It's not clear to me how significantly affecting the environment a pipeline that's already put in the ground would be at that point in time and whether NEPA would apply. Brooks says it would apply. Do you really want to argue with him about that? Well, again, that goes back to the – I mean, maybe you do. Well, I mean, I think that also raises the question, though, of how meaningful that NEPA analysis will be. NEPA has been said over and over again that the point of NEPA is to let the agency review the environmental consequences before it makes a decision. And here, if that's the way that this works, if we do a show-cause order and look back at this and see Section 7 applies, there's no review before the agency has made its decision, the pipeline's in the ground, and maybe mitigation measures can be imposed later. But the really meaningful analysis and the purpose of NEPA has been subverted there. Could I ask a different question about circumstances in which NEPA review seems artificial, which is this is a case in which we're talking about exports to a country with which the United States has a free trade agreement. And the statute, Section 3 in those circumstances, says that FERC shall approve without modification or delay. It seems like for this kind of case, the NEPA review, regardless of all these other issues, the NEPA review is going to be pro forma and can't possibly stop the project because Congress has essentially ordered FERC to make these approvals. Right. I don't think NEPA provides a substantive authority to an agency to deny a project just on NEPA basis alone. And the Natural Gas Section 3 allows the agency, allows the commission to impose conditions and modifications, which, in fact, the agency has done here. Well, except in this class of cases it says approve without modification or delay. Apparently the commission doesn't interpret it that way since they impose these mitigation conditions and things like that. So I can't say anything beyond that. I also want to touch on this issue of the predominant test. You have, like, finish up. Yes, sir. Okay. Yes, Your Honor. If this pipeline had been approved from the very beginning, flowing 19 percent interstate gas, it would be used as a Section 7 jurisdictional pipeline. There's no predominant test as far as I'm aware, and introducing one at this stage is inserting something that doesn't exist. Thank you, Your Honor. Thank you. We will take the case under submission. Thank you both, all three of you. Thank you.
judges: Tatel, Millett, Katsas